UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TANYA H.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C20-5101-MLP

ORDER

## I.   INTRODUCTION

Plaintiff, proceeding *pro se*, seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) failing to properly evaluate her testimony; (2) failing to properly evaluate her mother's testimony; (3) failing to properly evaluate the medical opinion evidence; (4) improperly determining Plaintiff's past relevant work experience and the applicability of her transferrable skills to other professions; and (5) failing to fully develop the record. Plaintiff additionally argues that new evidence submitted to the Appeals Council since the ALJ's determination supports remand.[1]

---

[1] Plaintiff listed additional issues that she failed to argue or develop in her brief. (*See* dkt. # 16 at 1.) Where a party does not argue an issue with any specificity, the Court should not consider it. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Therefore, any issues not specifically outlined here are deemed waived.

ORDER - 1

(Dkt. # 16 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1979, has a high-school education, and has worked as an emergency medical technician and retail manager.[2] AR at 54. Plaintiff was last gainfully employed in April 2016. *Id.* at 41.

On July 6, 2016, Plaintiff applied for benefits, alleging disability as of April 1, 2016. AR at 39. Plaintiff's applications were denied initially on November 22, 2016, and on reconsideration on March 21, 2017, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing on November 19, 2018, the ALJ issued a decision on February 7, 2019, finding Plaintiff not disabled. *Id.* at 56.

Utilizing the five-step disability evaluation process,[3] the ALJ found:

Step one: Plaintiff did not engage in substantial gainful activity since April 1, 2016 (20 C.F.R. § 404.1571 *et seq.*).

Step two: Plaintiff has the following severe impairments: Ehlers-Danlos syndrome, narcolepsy, obesity, bilateral knee patellofemoral osteoarthritis, status post patellar dislocation repair surgery, and major depressive disorder (20 C.F.R. § 404.1520(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]

Residual Functional Capacity: Plaintiff can perform a range of light work, as defined in 20 § C.F.R. 404.1567(b). She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for four hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally push and/or pull with the lower extremities bilaterally. She can frequently stoop. She can occasionally balance, kneel, crouch, crawl, and climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold, wetness, and vibration.

---

[2] Plaintiff disputes that she worked as an emergency medical technician because she served as a medical technician in an emergency room for a hospital, which requires different licensure and training. (Dkt. # 16 at 6.)
[3] 20 C.F.R. § 404.1520.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

She must avoid even moderate exposure to extreme heat, pulmonary irritants, and hazards such as unprotected heights and moving machinery. She can understand, remember, and carry out simple instructions. She can perform simple tasks and learned detailed tasks. She can tolerate occasional interaction with members of the public.

Step four: Plaintiff is unable to perform any past relevant work (20 C.F.R. § 404.1565).

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled (20 C.F.R. §§ 404.1569, 404.1569(a)).

AR at 16-24.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 3.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

ORDER - 3

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Discounting Plaintiff's Testimony

Plaintiff contends the ALJ erred in discounting her testimony regarding the severity of her impairments. (Dkt. # 16 at 3-4.) Specifically, Plaintiff argues the ALJ misunderstood certain details about her employment activities, her ability to work as a nurse, and overestimated her ability to care for her childrens' needs. (*Id.*) Absent affirmative evidence showing the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When evaluating a claimant's statements, the ALJ may consider whether the claimant engaged in activities that were inconsistent with her allegations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

At the hearing, Plaintiff testified: (1) she is unable to sustain competitive employment due to her physical impairments; (2) she experienced a worsening of her Ehlers-Danlos syndrome and narcolepsy in January 2016 due to her pregnancy and because she could not take stimulants for her narcolepsy while pregnant; (3) since giving birth in September 2016, she has experienced a significant deterioration in her health, including severe fatigue and weakness; and (4) she suffers from severe allergies causing dizziness and shortness of breath. AR at 45. Plaintiff also testified she approximated she could stand for only one hour and that she has difficulties with prolonged sitting, climbing stairs, and using her hands to grasp objects. *Id.*

In his decision, the ALJ determined Plaintiff's subjective reports of symptom intensity, persistence, and limiting effects did not support her allegations of disabling limitations, were not consistent with the medical evidence, and that Plaintiff's treatment record was inconsistent with her testimony. AR at 46-50. The ALJ specifically discounted Plaintiff's testimony because he found it was inconsistent with her level of functioning in her personal life and her work history. *Id.* at 50-51.

Here, the ALJ did not err in discounting Plaintiff's testimony. First, the ALJ found Plaintiff made inconsistent statements regarding her work history. AR at 51. Plaintiff initially testified she had not worked since closing her consignment business in June 2016, but later testified she worked for her friend's childcare business in 2017. *Id.* at 51, 152-53, 159, 270. Plaintiff now clarifies this work was mainly income realized from the unsold inventory of her consignment store to her friend's childcare business and that the money paid to her was done as a favor to aid her in supporting her family. (Dkt. # 16 at 3.) Nevertheless, on direct inquiry from the ALJ, Plaintiff responded that her income in 2017 was received for helping her friend with childcare "because I needed the money." AR at 159, 174-75. While Plaintiff does not believe the ALJ adequately considered this aspect of her testimony, the ALJ's interpretation is rational in light of the record. *See Molina*, 674 F.3d at 1111; *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (finding where the evidence is susceptible to more than one rational interpretation, the Commissioner's interpretation must be upheld).

Next, the ALJ did not err in discounting Plaintiff's testimony based on her ability to work as a nurse. In his decision, the ALJ found that Plaintiff believes she could work, despite her impairments, because she was attending school to become a nurse and could not give a coherent answer on how she planned to work as a nurse given her alleged symptoms and functional

limitations. AR at 50, 167. In response to the ALJ's inquiry on this topic, Plaintiff testified at the hearing:

> I don't know, but I have to do something. I'm only 39. There's a wide range of things you can do as a nurse and before I owned my store, I worked in the medical field. So, it felt like a natural progression of things to do. But honestly, I don't know.

*Id.* at 167. The ALJ is entitled to draw reasonable inferences logically flowing from the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As such, the ALJ reasonably discounted Plaintiff's testimony on the basis she was capable of a much higher degree of functioning because of her ability to work toward becoming a nurse. *See Orn*, 495 F.3d at 639 (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]").

      Finally, the ALJ did not err in discounting Plaintiff's testimony based on her level of activity in her personal life. Though Plaintiff testified she suffered from pain, weakness, and severe fatigue (AR at 155, 164, 169, 170), Plaintiff attended college for a degree in nursing, did several household activities, provided primary child care to her four young children, and was capable of driving a motorcycle during the relevant period. *Id.* at 50-51, 156-62, 167, 324-25, 637, 643, 1248. The ALJ acknowledged Plaintiff received help with childcare from the father of her oldest children and a nanny, but nevertheless concluded her activities undermined the severity of her symptoms because the record indicated she handled the bulk of childcare duties. *Id.* at 50-51. As considered previously, Plaintiff's level of activity in her personal life was inconsistent with her testimony and Plaintiff's alternative interpretation of the evidence does not show the ALJ erred. *See Orn*, 495 F.3d at 639, *Burch*, 400 F.3d at 680-81.

ORDER - 6

1   Given the overall record, the ALJ provided clear and convincing reasons, supported by
2   substantial evidence, for discounting Plaintiff's testimony. *See Burrell*, 775 F.3d at 1136-37;
3   *Molina*, 674 F.3d at 1112.

### B. The ALJ Did Not Err in Evaluating the Lay Evidence

Plaintiff next argues the ALJ erred in evaluating Plaintiff's mother's statement. (Dkt. # 16 at 4.) Plaintiff's mother's statement detailed that: (1) Plaintiff had chronic difficulties from Ehlers-Danlos syndrome, narcolepsy, and major depression; (2) that Plaintiff's conditions worsened while she was pregnant with her fourth child; (3) that Plaintiff's mother provided significant support to Plaintiff during Plaintiff's pregnancy, after the birth of her fourth child, and with childcare, errands, and preparing meals; and (4) that her daughter currently has a paid nanny through the Washington State Department of Social and Health Services and childcare help for her youngest child. AR at 53, 474-75.

To determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In his decision, the ALJ discounted Plaintiff's mother's statement because it primarily concerned Plaintiff's condition while she was pregnant and off her medication regiment. AR at 53, 474-75. The ALJ additionally discounted Plaintiff's mother statement because it was not consistent with Plaintiff's treatment records, which showed her condition responded well to

treatment, and because she described limitations that were inconsistent with her reported activities. *Id.*

In this case, it is clear from the record that when Plaintiff could not take her medication during pregnancy, her conditions deteriorated. AR at 593. However, Plaintiff's conditions improved when she was able to return to her medication regiment. *Id.* at 855, 859, 981. Impairments that can be controlled effectively with treatment are not disabling. *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Furthermore, though Plaintiff's mother described her as suffering fatigue and extreme weakness (AR at 474-75), as previously noted above, Plaintiff was able to take college classes, complete household duties, raise her four young children, and ride a motorcycle. *Id.* at 50-51, 53, 157-58, 1248. Therefore, the ALJ reasonably discounted Plaintiff's mother's statement because it was inconsistent with the medical evidence and because her statement was not persuasive regarding Plaintiff's level of activity for the same reasons Plaintiff's allegations were not persuasive. *Id.* at 50-51, 53; *see Molina*, 674 F.3d at 1117 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the ALJ's decision should be upheld); *Bayliss*, 427 F.3d at 1218. As such, the ALJ provided a germane reason for discounting Plaintiff's mother's testimony and did not err. *See Dodrill*, 12 F.3d at 919.

**C.      The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

Plaintiff next makes several challenges to how the ALJ assessed the medical opinion evidence. (Dkt. # 16 at 4-6.) In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not

ORDER - 8

contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

### 1. Michael Raff, M.D.

Plaintiff first argues the ALJ improperly assessed the opinion of Dr. Michael Raff and ignored his provided RFC. (Dkt. # 16 at 4-5.) However, the ALJ explicitly mentioned Dr. Raff's opinion in his decision. AR at 52. The ALJ assessed Dr. Raff's opinion little weight because the ALJ found it was vague and failed to provide a functional analysis. *Id.* Dr. Raff's did not complete the parts on his provided RFC form regarding how long Plaintiff could stand, sit, walk, or lift. *Id.* at 416-17. Instead, Dr. Raff wrote, "see physical therapy notes." *Id.* Because Dr. Raff's opinion failed to provide information on Plaintiff's ability to perform work-related activities, the ALJ reasonably assessed his opinion and declined to incorporate his recommendations into Plaintiff's RFC. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

### 2. *Shawn Horn, Psy.D. and Leslie Postovoit, Ph.D.*

Plaintiff next argues the ALJ improperly assessed great weight to State Agency Medical Consultants Dr. Shawn Horn and Dr. Leslie Postovoit's opinions. (Dkt. # 16 at 5.) Dr. Horn and Dr. Postovoit both opined Plaintiff could perform simple tasks, some moderately detailed tasks,

ORDER - 9

could interact appropriately with co-workers, accept instructions from supervisors, but noted she should only occasionally interact with the public. AR at 199-200, 215-16. The ALJ concluded both of their opinions were consistent with Plaintiff's overall medical record, specifically Dr. Peter Weiss's assessment of the medical evidence, which opined similar moderate limitations and that Plaintiff's conditions were stable with medication. *Id.* at 51-52, 636-640. The ALJ also found Dr. Horn and Dr. Postovoit's opinions were consistent with Plaintiff's treatment progress and ability to attend nursing school while raising her children. *Id.* at 51-52. Therefore, the ALJ did not err in assessing weight to their opinions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding the opinions of non-examining medical experts amount to substantial evidence if other evidence in the record supports their findings).

          *3.*     *Austin Lampert, M.D., John Daniel, M.D., and Krista Banks, PA-C*

Finally, Plaintiff argues the ALJ improperly rejected the opinions of Dr. Austin Lampert, Dr. John Daniel, and Certified Physician Assistant Krista Banks because their treatment notes demonstrated she was incapable of working. (Dkt. # 16 at 6.) Dr. Lampert found Plaintiff would be unable to work until she restarted Dexedrine therapy for her narcolepsy (AR at 681), and Dr. Daniel and PA-C Banks both opined Plaintiff was disabled due to her narcolepsy. *Id.* at 853, 1335-40. The ALJ discounted these opinions because he determined they were conclusory, vague, and did not provide a functional analysis. *Id.* at 52-53. As previously explained above, the omission of functional limitations was a valid reason to discount these medical opinions and the ALJ did not err. *See Ford*, 950 F.3d at 1156.

    **D.**    **The ALJ Did Not Err at Step Four in Finding Plaintiff was not Capable of Past Relevant Work or in the Step-Five Determination**

Plaintiff argues the ALJ's misclassified her past relevant work and that this calls into question the applicability of her transferrable skills to other professions. (Dkt. # 16 at 6-7.)

ORDER - 10

1  Plaintiff clarifies she was not an emergency medical technician and did not do retail sales as
2  contemplated in the ALJ's decision. (*Id.*) As a result, Plaintiff argues the ALJ erred at step five
3  based on an RFC that failed to accurately consider Plaintiff's limitations and the vocations she
4  was qualified to perform. (*Id.* at 7-8.)

5  At step four, "the claimant has the burden to prove that [she] cannot perform [her] prior
6  relevant work either as actually performed or as generally performed in the national economy."
7  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008). The step-four
8  analysis is limited solely to determining whether the claimant can perform past relevant work. *Id.*
9  (citing *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985); *see also* 20 C.F.R. § 404.1520.
10 Only if the ALJ finds the claimant can no longer perform her past work does the analysis move
11 to step five in determining whether the claimant can perform any other work that exists in the
12 national economy. *Valencia,* 751 F.2d at 1086-87.

13 The ALJ did not harmfully err at either step. The ALJ found Plaintiff could not perform
14 any past relevant work at step four (AR at 54), however, it appears Plaintiff's past relevant work
15 as a medical technician, who served in an emergency room, was misclassified as being an
16 emergency medical technician given her actual work experience. *See id.* at 172-75. Nevertheless,
17 the ALJ also found Plaintiff was not disabled at step five because she could still do other jobs
18 that exist in significant numbers in the national economy. AR at 55. Therefore, the ALJ's error at
19 step four was harmless. *See Tommasetti*, 533 F.3d at 1042-43 (An error at step four is harmless
20 where the ALJ also finds the claimant not disabled at step five). Moreover, a plaintiff cannot
21 establish step-five findings are incorrect by merely restating her argument that the ALJ
22 improperly discounted other evidence in determining her limitations. *See Stubbs-Danielson*, 539
23 F.3d at 1175-76. Because substantial evidence supports the ALJ's assessment of the medical

ORDER - 11

evidence and witness testimony, as previously explained above, the Court finds no error in the assessed RFC at step five. *See id.*

### E. The ALJ Did Not Err by Failing to Fully Develop the Record

Plaintiff argues the administrative record is missing records from Certified Physician Assistant Christy Capple and Dr. Margo Newell-Eggart, which she allegedly hand delivered with 850 pages of other records five days prior to her hearing, and that the ALJ erred in failing to consider these records. (Dkt. # 16 at 5.) Plaintiff indicates an RFC was provided from PA-C Capple at Washington Orthopedic Center but is not in the record nor considered by the ALJ. (*Id.*) Plaintiff further argues a summary by Dr. Margo Newell-Eggart of Plaintiff's health information and diagnosis is missing from the record. (*Id.*)

An ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also* 20 C.F.R. § 404.1512(b). The ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ may discharge this duty in several ways, including: subpoenaing claimant's physicians, submitting questions to claimant's physicians, continuing the hearing, or by keeping the record open after the hearing to allow for supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288.

Here, Plaintiff fails to demonstrate the record was inadequate to allow the ALJ to make a disability determination on the evidence before him. The ALJ noted in his decision that Plaintiff submitted written evidence less than five business days before the scheduled hearing, but that the

ORDER - 12

requirements of 20 C.F.R. § 404.935(b) were met, and therefore, he was admitting the evidence into the record. AR at 39. Consequently, the administrative record included Plaintiff's treatment record from Washington Orthopedic Center, which included PA-C Capple's examination notes. *Id.* at 669-79. Dr. Newell-Eggart's treatment records were also included and contained multiple notes regarding Plaintiff's medical history. *Id.* at 793-825. Both PA-C Capple and Dr. Newell-Eggart's treatment records were considered by the ALJ. *Id.* at 47-48. Though Plaintiff identifies that some of PA-C Capple's and Dr. Newell-Eggart's records were allegedly omitted or not properly considered, further medical opinion evidence or examination was not necessary to adjudicate Plaintiff's disability status because the record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *See Mayes*, 276 F.3d at 459-60. Moreover, it appears the ALJ did consider the treatment records provided for both practitioners. AR at 47-48. Accordingly, the ALJ did not err by failing to develop the record.

### F. The New Evidence Submitted to the Appeals Council after the ALJ's Determination Does Not Require Remand

Finally, Plaintiff argues the Court should consider new medical evidence submitted to the Appeals Council after her hearing to determine whether the ALJ's decision is supported by substantial evidence and free of legal error pursuant to *Brewes v. Comm. of Soc. Sec. Admin*, 682 F.3d 1157 (9th Cir. 2012). (Dkt. # 16 at 7-10.) Plaintiff argues the new evidence submitted confirms that, during the relevant period addressed by the ALJ, Plaintiff was more limited than she was found to be by the ALJ. (*Id.*)

Plaintiff's new evidence submitted to the Appeals Council includes: (1) treatment notes from Providence Centralia Hospital, where Plaintiff was treated after complaints of chest pain, documenting potential breast cancer and pulmonary nodules (AR at 10-16, 22-24); (2) the results of an angiogram (*id.* at 17-19); (3) a letter from Dr. Elizabeth Grant summarizing Plaintiff's

ORDER - 13

mental health impairments (*id.* at 33); (4) treatment notes from Washington Orthopedic Center regarding Plaintiff's foot and ankle (*id.* at 64-71); (5) treatment notes from Prime Health Clinic concerning Plaintiff's digestive health (*id.* at 72-83); (6) a self-administered questionnaire regarding Plaintiff's conditions (*id.* at 112-115); (7) a chest x-ray result and examination from Providence Centralia Hospital based on pulmonary hypertension concerns (*id.* at 116-125); and (8) a health summary from Olympia Obstetrics and Gynecology (*id.* at 126-130). Plaintiff also included various informational resources regarding her conditions as well as copies of documents related to insurance claims and billing statements. *Id.* at 25-32, 84-111, 131-143.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163. This Court must, in other words, "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record—including any new evidence in the administrative record that the Appeals Council considered—not just the evidence before the ALJ." *Gardner v. Berryhill*, 856 F.3d 652, 656 (9th Cir. 2017). New evidence is relevant to determining whether the ALJ's decision is supported by substantial evidence only where it "relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5).

The Appeals Council denied Plaintiff's request for review and noted the new evidence either did not show a reasonable probability it would change the ALJ's decision or did not relate to the period at issue. AR at 2. Consequently, the Commissioner argues Plaintiff's additional evidence does not undermine the ALJ's decisions and the majority of it should be disregarded because it does not relate to the relevant period. (Dkt. # 17 at 7-8.)

ORDER - 14

The Court has reviewed the evidence submitted to the Appeals Council as part of the administrative record and finds that it fails to undermine the ALJ's decision. The majority of the submitted evidence relates to Plaintiff's adjudicative period because it concerns episodes or follow-up related to health conditions and symptoms previously considered by the ALJ in his decision. *Compare* AR at 10-24, 33, 64-83, 112-130 *with* AR 39-56; *see* 20 C.F.R. § 404.970(a)(5). However, Plaintiff has failed to show that the new evidence submitted demonstrates the ALJ erred in determining her physical or mental limitations during the relevant period. While the new medical evidence provides more detail regarding Plaintiff's various ailments previously disclosed to the ALJ, the evidence does not show a reasonable probability it would change the outcome of the ALJ's previous analysis of her functional limitations during the relevant period. *See Gardner*, 856 F.3d at 656; 20 C.F.R. § 404.970(a)(5).

In conclusion, because substantial evidence supports the ALJ's assessment of the evidence regarding Plaintiff's limitations, as previously explained above, the ALJ's decision should be affirmed.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 22nd day of September, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge